IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DEBERAH REECE                                                          PLAINTIFF

v.                              Civil No. 13-2165

CAROLYN W. COLVIN[1], Acting Commissioner of
Social Security Administration                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying her claim for a

period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act

(Act), 42 U.S.C. § 423(d)(1)(A).  In this judicial review, the court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42

U.S.C. § 405(g)**.**

**I.  Procedural Background:**

The plaintiff filed her application for DIB on November 19, 2010 alleging an onset date of

March 4, 1992, due to plaintiff's fibromyalgia, diabetes, bone tumors, torn rotator cuff, and mental

problems.  (T. 58, 108).  Plaintiff's application was denied initially and on reconsideration.  Plaintiff

then requested an administrative hearing, which was held on October 19, 2011.  Plaintiff was present

and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael
J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 60 years of age, possessed a high school education, and was able to communicate in English.  (T. 20).  The plaintiff has no past relevant work ("PRW") experience.  (T. 20).

On January 6, 2012, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's back disorder does not meet or equal any Appendix 1 listing. (T. 18).  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform the full range of medium work. (T. 18).  With the assistance of a vocational expert through a series of interrogatories, the ALJ determined plaintiff could perform other work as a dietary aide, hospital food service worker, and hand packager.  (T. 21).

## II.  Applicable Law:

The court's role is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough so that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and

-3-

relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

**A. Period of Review**

In her application, the plaintiff initially alleged an onset date of March 4, 1992. (T. 108). She later requested in a pre-hearing memorandum to amend her alleged onset date to October 1, 2010, which was her date first insured. (T. 252). At the hearing, the plaintiff's attorney requested an amended alleged onset date of October 1, 2010, and the ALJ noted the request. (T. 32-33). Subsequently, the ALJ held in the decision that March 4, 1992 was the alleged onset date, and that the plaintiff had not been under a disability from that date through the date of the decision. (T. 16, 21). The plaintiff expressed concern that the ALJ withdrew his acknowledgment of the plaintiff's amendment. *See* Plaintiff's Brief (Pl.'s Br.) at 5. The court finds that the use of the alleged onset date of March 4, 1992 in the decision was not a reversible error because the original alleged onset date was prior to the amended alleged onset date. The ALJ simply reviewed more medical records, including the evidence from October 1, 2010 and beyond, than what was necessary in making his decision. The hearing records show that the ALJ was aware of the request to amend the alleged onset date (T. 32-33). Nevertheless, the ALJ ultimately found that the residual functional capacity assessment was supported by the long-term review of the medical evidence of record. (T. 20). *See Buckner v. Astrue*, 646 F.3d 549, 559-560 (8th Cir. 2011) (an arguable deficiency in opinion-writing technique does not require a decision to be set aside when the deficiency has no bearing on the outcome).

**B. Impairments**

The plaintiff alleges that the ALJ applied the wrong legal standard in requiring a "significantly limiting" standard to his evaluation of the plaintiff's impairments. *See* Pl.'s Br. at 6.

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms. *See* 20 C.F.R. §§ 404.1508, 404.1527**.** Based on the established case law, the court finds that the ALJ applied the appropriate legal standard for determining the plaintiff's severe impairments.

### 1. Physical Impairments

The plaintiff alleges additional severe physical impairments besides the one the ALJ found such as neuropathy (hands/fingers), elbow, and post-operative shoulder tendinitis and adhesions. *See* Pl.'s Br. at 8. Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by the medical record. *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000); *see also Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) (plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation). In regards to her neuropathy and left elbow problems, she was treated conservatively with Neurontin by her primary care physician. (T. 309). The plaintiff was later referred to a neurologist, Dr. Knubley, who diagnosed her with possible early peripheral neuropathy. (T. 568). However, Dr. Knubley wrote that she did not appear to have any major physical difficulties other than pain management. (T. 568). Dr. Knubley advised that it was reasonable to keep her on Neurontin and titrate upon the dose. (T. 290). A nerve conduction velocity study ("NCV") of the left upper

extremity did not fall into the abnormal range even though there was a drop in conduction across the elbow. (T. 294). A second NCV showed a drop in ulnar conduction that was dramatic, but again it did not fall out of normal values. (T. 573). The plaintiff returned to Dr. Knubley approximately a year after her initial visit, and only conservative treatment such as elbow splints, physical therapy at home, and Neurontin and Aleve were recommended. (T. 584). As a result of the normal NCV results and conservative treatment, the court agrees with the ALJ's finding that the plaintiff's neuropathy and left elbow problems were non-severe impairments. (T. 16-20).

In regards to her post-operative shoulder tendinitis and adhesions, an X-ray of her right scapula was negative, and she received a Lidocaine and Decadron injection with good relief. (T. 441, 453). Dr. Williams ordered a left shoulder X-ray that showed density that appeared post-surgical. (T. 360, 362). The plaintiff was referred to the UAMS Surgical Oncology Clinic where she was last seen 11 years ago for benign tumors. (T. 421). Dr. Nicholas, an orthopedic oncologist, wrote that he suspected she had recurrent rotator cuff tendinitis. (T. 422). Dr. Nicholas saw no evidence of recurrent cartilage neoplasm, additional calcifications, or neurologic abnormality in the left upper extremity. (T. 421, 422). The plaintiff was diagnosed with stable, radiographic abnormalities due to her previous surgery and was only prescribed therapy. (T. 422). The plaintiff received occupational therapy for approximately a month and a half. She later reported to her therapist that her pain was still low and was very thrilled. (T. 474). She even returned to work and reported that the pain was the same while working and not worse. (T. 475). The plaintiff was discharged from therapy with a report that she made progress towards long-term goals and her functional goal, a 4/10 was at worst now, and she only reported mild to moderate difficulty with activities of daily living and work tasks. (T. 466). Later, Dr. McAuley continued treatment by

administering a Lidocaine and Decadron injection with good relief.  (T. 424).  Based on records showing good results from therapy and injections with no referral for surgery, the court concurs with the ALJ's finding of non-severe.  (T. 16-20).

The court agrees with the ALJ's finding that the plaintiff's only severe impairment was her back disorder.  (T. 16).  Objective testing such as X-rays and an MRI study showed moderate degenerative disc disease at the C5-6 levels and mild degenerative disc disease at the C4-5 and C6-7 levels.  (T. 362, 454, 571).  Nevertheless, the plaintiff only received treatment from her primary care physician, and she was not referred to a specialist or advised to have surgery.  (T. 272-590).  This evidence shows that the plaintiff was able to manage her symptoms over the years with minimal treatment, and she was still able to perform various activities of daily living despite her back disorder.  As a result, the court agrees with the ALJ's finding that her severe back impairment did not prevent her from working in some capacity.  (T. 16-18).

### 2.  Mental Impairments

The plaintiff alleges severe mental impairments such as depression, anxiety, and personality disorders.  *See* Pl.'s Br. at 11.  The ALJ found that her medically determinable mental impairments do not cause more than a minimal limitation in her ability to perform basic mental work activities and are therefore, non-severe.  (T. 17).  In regards to her mental impairments, the plaintiff received regular treatment from Dr. McAuley and Dr. Pennington.  She was consistently diagnosed with mood disorder NOS, dysthymia, depression, and personality disorder with dependent traits.  (T. 278, 281-282, 388-391, 396, 415, 489, 566).

Although the plaintiff's Global Assessment of Functioning ("GAF") scores remained low and reflected primarily serious symptoms, her treatment remained conservative consisting of only

counseling sessions and prescribed medication like Zoloft.  (T. 272, 275, 278-282, 284-286, 365, 389-391, 396, 399, 410, 415416, 437, 566).  A particular GAF score does not warrant a finding of disability because it only applies to the date in the medical report in which it is noted. Comments to new rules revising criteria for evaluating mental disorders effective September 20, 2000, state that GAF scores do not have a direct correlation to the severity requirements in the mental disorders listings. 65 Fed. Reg. 50746, 60764-65 (August 21, 2000).  Instead, disability determinations should be made on a case by case basis, considering all the evidence, not just a GAF result. *Lozada v. Barnhart*, 331 F.Sup. 2d 325, (E.D. Penn. 2004); *Purvis v. Commissioner*, 57 F.Supp.2d 1088, 1093 (D. Oregon 1999).  As this court has explained, "[w]hile the GAF system provides insight into a claimant's overall level of functioning, it is by no means dispositive on the issue of disability and must be considered in conjunction with other medical evidence."  *Stewart ex rel. J.L.M. v. Astrue*, 2:11-CV-02203-JRM, 2013 WL 252749 (W.D. Ark. Jan. 23, 2013).  It was noted in the records that compliance with treatment has shown improvements, and Dr. Pennington even wrote that she has had a very positive response to Zoloft.  (T. 415, 566).  The evidence also shows that her treatment remained consistent with nothing further required such as inpatient psychiatric treatment, and she has been able to work a part-time job in a retail store since 2008.  (T. 274-286, 363-367, 387-416, 566-567).

The ALJ found that Dr. Pennington's assessment of severe mental limitations was not supported by his own clinic notes or by the plaintiff's testimony regarding her activities of daily living, including caring for her teenage granddaughter and working at least part-time.  (T. 17, 501-502).  A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed I'Iv. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (internal quotations omitted). The court agrees with the ALJ's finding that her mental impairments are non-severe because his treatment notes are inconsistent with the opinion he provided. Dr. Pennington continued the same treatment over several years without mentioning any limitations or problems. (T. 389-391, 396, 566). In addition, she continued to be highly functional and was able to manage her symptoms with medication. (T. 202-208). To the extent that the plaintiff contends she had other severe impairments besides the ones the ALJ found in his decision, the court finds the contention to be without merit.

### 3. Combined Effect of Impairments

The plaintiff alleges that the decision was devoid of any indication that the ALJ considered the combined effect of all the plaintiff's impairments, severe and non-severe. *See* Pl.'s Br. at 7. A review of the record reveals that the plaintiff's allegations are unfounded. *See, e.g.*, *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (holding that ALJ properly considered combined effects of claimant's impairments where ALJ found that the claimant had a history of coronary artery disease, hernia repair, and chronic obstructive pulmonary disease, but that the claimant did not have an impairment or combination of impairments that rendered him disabled). The ALJ expressly found that she "does not have an impairment or combination of impairments that meets or medically equals

-9-

the severity of one of the listed impairments." (T. 18). "After careful consideration of the entire record" her residual functional capacity was determined. (T. 18). "None of her impairments and resulting limitations of function, whether considered singly or in combination, limit her to such a degree that she would be unable to perform the jobs as set out." (T. 20). Based on the ALJ's synopsis of the plaintiff's medical records and discussion of each of her alleged impairments, the court concludes that the ALJ properly considered the combined effects of plaintiff's impairments.

## C.  Residual Functional Capacity

The ALJ determined that the plaintiff had the RFC to perform the full range of medium work.[2] (T. 18). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646

---

[2]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 CFR § 404.1567(c) and 416.967(c).

-10-

(8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F.3d 614, 619 citing *Lauer*, 245 F.3d at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Cox*, 495 F.3d at 620; 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

### 1. Credibility

The plaintiff alleges that the ALJ erroneously failed to properly evaluate the plaintiff's subjective complaints and apply the *Polaski* factors. *See* Pl.'s Br. at 13; *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529(c)(3) (2003). In determining a claimant's RFC, "'the ALJ must first evaluate the claimant's credibility.'" *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)). Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ). As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). The court should, " defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue* 687 F.3d 1086, 1091 (8th Cir. 2012).

The plaintiff alleges that the sparseness of the ALJ's *Polaski* factors discussion was

troubling.  *See* Pl.'s Br. at 13.  The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered."  *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).  The court finds that the ALJ considered and discussed the *Polaski* factors in the decision.  For instance, the ALJ found discrediting evidence in regards to her alleged pain.  The ALJ found that although she reported neck and right arm pain in October 2007 and underwent an injection for the arm pain, she did not return for medical treatment for any reason until February 2009. (T. 19).  Between December 2009 and June 2010, the ALJ determined that she went another six months without treatment for physical complaints. (T. 19).  In addition, Dr. Knubley found that she did not appear to have any major physical difficulties other than management of her pain.  (T. 19-20).  Another example of the *Polaski* analysis was when the ALJ examined her daily activities acknowledging her ability to care for her teenage granddaughter, perform personal care and household chores, and work a part-time job in retail on a long-term basis.  (T. 17-18).

The plaintiff reported that she was working part-time in order to afford medical treatment. *See* Pl.'s Br. at 14.  Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work.  *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005); *Gowell v. Apfel,* 242 F.3d 793, 798 (8th Cir. 2001). The court finds that the ALJ properly considered her part-time work during the claimed period of disability in the credibility analysis.  The plaintiff testified that she only gets Zoloft because that is all she can afford and goes without other medication.  (T. 41).  The ALJ noted that she also stopped therapy without achieving her initial goals.  (T. 19).  However, there is no evidence that she has ever been turned down for medical care or that she has contacted one of the charitable organizations in the area in an effort to obtain medical care.  (T. 272-590).  As such, her failure to comply with recommended treatment is not excused.

-12-

*See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted).  Because the ALJ's credibility determination was supported by good reasons and substantial evidence, we conclude that it is entitled to deference. *See Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006).

## 2. RFC Determination and Opinion Evidence

The plaintiff alleges that the ALJ relied on a residual functional assessment completed by a non-treating medical consultant, indicating plaintiff's ability to perform within the medium exertional level.  *See* Pl.'s Br. at 16.  Dr. Crow, a DDS medical consultant, found that the medical evidence records supported a medium residual functional capacity noting only one mention of fibromyalgia in the file, a diagnosis of type II diabetes, and a benign tumor of the femur, but physical examinations do not show a significant decrease in range of motion.  (T. 359).  Dr. Norcross, another DDS medical consultant, found that the evidence supported a medium residual functional capacity with limited overhead reaching occasionally with the left upper extremity.  (T. 386).  Dr. Norcross based the assessment on her degenerative disc disease of the cervical spine, tumor of the left shoulder or pain, and diabetes with longitudinal neuropathy, and activities of daily living.  (T. 386).  The ALJ gave their opinions some weight, acknowledging they do not deserve as much weight as those of examining and treating physicians, but found that there existed a number of other reasons to reach similar conclusions.  (T. 20).  The court finds in this instance that the ALJ

-13-

properly considered all of the evidence in determining the plaintiff's residual functional capacity in light of plaintiff's testimony and the lack of evidentiary support for her allegations.  *See Page v. Astrue*, 484 F.3d, 1040, 1043 (8th Cir. 2007) (the medical evidence, state agency physician opinions, and claimant's own testimony were sufficient to determine RFC); *Stormo v. Barnhart*, 377 F3d 801, 807-08 (8th Cir. 2004) (medical evidence, state agency physicians' assessments, and claimant's reported activities of daily living supported RFC finding).  It should be acknowledged that the court cannot consider Dr. McAuley's July 3, 2012 opinion because the ALJ decided the case only through January 6, 2012, and we concur with the Appeal Council's reasoning regarding the matter.  (T. 2).

**D.  Vocational Expert**

The plaintiff alleges that the ALJ did not include in his interrogatories to the vocational expert ("VE") about any manipulative/reaching limitations and omitted any mental limitations.  *See* Pl.'s Br. at 19.  Since there is no evidence in the record that supports such physical limitations and the court supports the ALJ finding that there are no severe mental impairments, such questioning is not required.  (T. 272-590).  "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quotation and citation omitted). The hypothetical question included all of the plaintiff's limitations found to exist by the ALJ and set forth in the ALJ's description of her residual functional capacity.  Based on the previous conclusion that the ALJ's findings of the plaintiff's residual functional capacity are supported by substantial evidence, the court holds that the hypothetical question was therefore proper.  As a result, the vocational expert's answer constituted substantial evidence supporting the Commissioner's denial of benefits.  For the reasons stated above, an award of benefits is unwarranted**.**

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial

evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this 18th Day of June 2014.

/s/ J. Marschewski

HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE